Jack Stanislaw, J.
In this proceeding instituted under article 78 of the former Civil Practice Act, petitioner Board of Education, Union Free School District No. 6, Babylon (hereinafter sometimes referred to as “ UFSD ”) asks direction that respondent refund certain budgetary surplus pro rata to itself and others. In furtherance of the relief demanded the respondent Board of Cooperative Education Services, Third Supervisory District (hereinafter sometimes referred to as 6 ‘ BCES ”) would also be directed to dispose of certain real property and *700 cancel its lease-purchase agreement for the construction of a vocational school. Respondent has moved to dismiss the petition as being both insufficient in law and untimely.
Petitioner is one of 15 component school districts in the Third Supervisory District. Respondent BCES was organized pursuant to the provisions of subdivision 1 of section 1958 of the Education Law to undertake and carry out a program of shared educational services in approved special subjects for all of the component districts. The BCES operates on an annual budget which is supported by prorating the member districts according to the ratio of valuation in each district to the total valuation of all the participating districts. These apportioned amounts are levied and collected by respondent and, prior to the 1961-1962 budget year, any unused portion of the budget was proportionately refunded at the end of the period. The 1961-1962 budget was regularly adopted, but no refund, was made though apparently a surplus should have been available.
The facts bearing upon the issues presented are as follows: on December 12, 1962, the BCES, composed of five persons elected by the member districts, unanimously resolved to purchase land for the construction of a vocational school building. An “Area Technical Center” (vocational school) would be housed here for the joint benefit of all component districts. A parcel was located and acquired by the use of otherwise surplus funds in the budget. Arrangements were made for construction and presumably the school is even now in operation. At the close of the 1961-1962 budget year the approximately $60,000 used for this purchase was of course not available to be refunded. Moreover, the amount had never appeared in the budget for use in this manner and its subsequent availability for refund was eliminated. Petitioner bases its claim upon the nonreflection of expenditure and the alleged unauthorized use of surplus, all of which left it without an anticipated recoupment of moneys. Issue is collaterally taken with the legality and propriety of respondent’s purchase of the land, per se.
By letter dated June 17, 1963 UFSD demanded refund of its proportionate share of ostensibly available budget surplus for the 1961-1962 fiscal year. The instant proceeding was commenced on or about July 5, 1963. Therefore, respondent concedes the action to be timely, but only with respect to the refund question, having been instituted within four months of petitioner’s demand for relief by way of refund on June 17 (Civ. Prac. Act, § 1286). However, the BCES argues that as to its acts resulting in the erection of the vocational school, since more than four months elapsed from the time final arrangements were *701 made for such school, those aspects of the petition are not timely and cannot be raised in this action. However, if the respondent had no power to act as it did in the first place the problem would now be subject to consideration regardless of the four-month limitation period: when action is taken by an administrative body purportedly in excess of its jurisdiction, statutory time limits are not available as a shield against judicial scrutiny. (Matter of Foy v. Schechter, 1 N Y 2d 604, 612; Streeter v. Cowle, 6 A D 2d 811; Mandel v. Waxman, 35 Misc 2d 1085.) However, the unavailability of a defense of statutory limitation of time is predicated on there being demand made for relief from the alleged unjustified acts. That is, ‘ ‘ attempted action of a public body without power is void and may be attacked for want of jurisdiction at any time when an attempt is made to enforce claims founded upon such action.” (Matter of Long Is. R. R. Co. v. Hylan, 240 N. Y. 199, 208; see, also, People ex rel. New York Cent. R. R. Co. v. Limburg, 283 N. Y. 344; Matter of Williams v. Morton, 297 N. Y. 328.) Failure of the BOBS to make the refund herein taken together with those acts leading to the expenditure thereof may be viewed as the affirmative U enforcement ” of its actions so as to enable petitioner to now dispute those actions. Unless this be so held an action conceivably void could not be reviewed at all. Compare Matter of Gallo v. Kennedy (154 N. Y. S. 2d 171, revd. 4 A D 2d 505, affd. 4 N Y 2d 949) a proceeding to compel performance of a legal duty as opposed to one taken to prohibit further action without jurisdiction.
Appeal by petitioner to the Commissioner of Education for relief might be available in this dispute (Education Law, §§ 310, 2037), as this court has previously acknowledged (Matter of Levert v. Gavin, 39 Misc 2d 569). However, the issues here are of first impression with respect to the interpretation to be given parts of section 1958 of the Education Law. Both the State Education Department and the Comptroller have rendered diametrically opposed opinions on the subject of surplus and its use. Where counsel to the Commissioner of Education has indicated a position the court will not rigidly insist upon the futile gesture of obtaining an already available determination which is reviewable in any event. In a broader sense, the opinion of counsel referred to can be considered almost equivalent to a proceeding under section 310 of the Education Law in the circumstances present in this situation.
The proceeding is timely and it now remains to examine the merits of petitioner’s theory. The BCES contends its procedures were taken in legitimate exercise of statutory powers, *702 from the resolution to acquire property through nonrefund of surplus. It is undisputed that proper meetings were held and resolutions made and passed resulting in the construction of a vocational school. No reference to or implication of fraud is made. The BOBS is created a body corporate (Education Law, § 1958, subd. 6), and from this it is reasoned that it may acquire and dispose of real property pursuant to subdivision 3 of section 14 of the General Corporation Law. But the latter section subjects corporate powers generally to “ limitations as may be prescribed by law.” It has been stated that “Education has long been regarded as serving a public and governmental purpose ” (Grimm v. County of Rensselaer, 4 N Y 2d 416, 421) and that “ Counties, towns and school districts are all1 municipal corporations ’ or governmental subdivisions of the state.” (Union Free School Dist. No. 3 v. Town of Rye, 280 N. Y. 469; see, also, Van Tassell v. Hill, 285 App. Div. 584; Central School Dist. No. 1 v. State of New York, 18 A D 2d 943; Matter of Board of Educ. v. Stoddard, 49 N. Y. S. 2d 38, affd. 268 App. Div. 936, affd. 294 N. Y. 667.) This effectively rebuts respondent’s argument that justification for" its actions can be found in its corporate powers generally and despite the absence of specific provision in the Education Law itself. Furthermore, while authority exists in the Education Law for the purchase of sites and construction of buildings by intermediate school districts and others (§§ 1955, 1709, subd. 6; § 401, subd. 2), reference to these procedures is pointedly omitted from section 1958 dealing with the structure, organization and powers of a board of co-operative educational services. It is interesting to note that this section does provide for budget approval (subd. 4, par. b), receipts and allocation of costs (subd. 4, par. b; subd. 5), borrowing (subd. 4, par. g), rental, only, of rooms, office or buildings (subd. 4, par. p), and that in the General Municipal Law, section 99-d merely provides for the planning of future capital improvements by “municipal corporation, school district or district corporation ”. A clear statutory basis for respondent’s actions cannot be readily ascertained with the necessary conclusion that they were unauthorized and void.
On the other hand, a similar lack of authority is to be noted for the position taken by petitioner in attempting to enforce a claim for a refund. Respondent did make proportionate refunds in the past, but the statute provides for such refund only upon dissolution of the co-operative district resulting from a redistricting (Education Law, § 1958, subd. 7). A complete vacuum exists here which cannot be remedied by the court sitting as a super Legislature or as conjurer of legislation. *703 Respondent’s practice with respect to refunds did not harden into petitioner’s right.
In summary, a situation is presented whereby the petitioner may properly question respondent’s acts but without the possibility of obtaining the refund it asks since there is no provision in the statute to compel this procedure. Remaining is consideration of the demand that the BOBS rid itself of this property and its related commitments. Petitioner does agree that respondent has accomplished useful and necessary ends, taking issue only with the means used to achieve them. Reparation to the TJFSD is clearly untenable without the breakup of these results, a radical step especially indigestible in view of the conceded benefits to be derived therefrom. Granting that a board of co-operative educational services should not and may not proceed as respondent did, the point here is to afford a remedy to this conflict which is not arbitrarily destructive of unquestionably fruitful facilities benefiting school children in particular and the public and taxpayers in general. With this entire situation clearly in mind, the motion to dismiss the petition is denied, and answer shall be served within 20 days of service of the order to be entered herein. The court expresses its hope that the parties develop in their papers hereafter a sound and rational approach to this essentially technical problem so as to retain the substantial educational achievement made, leaving to others all those “matters of principle”. Workable solutions may present themselves for intelligent consideration after joinder of issue. At this point the court hesitates to interject proposals based upon the incomplete presentation made thus far, but it does advise these parties of its interest, availability and desire to assist so as to resolve this otherwise ultimately most non-gratifying contest. A pat on the back or a slap on the wrist, either way, seems to be the most that might be forthcoming here unless there is total negation of a good thing in both form and substance. Such latter deterioration of the current predicament would be regrettable.